IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| JAMES BUSER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:12-CV-755-FL |
| ) | |
| ECKERD CORPORATION D/B/A ) | |
| RITE AID ) | |
| and ) | |
| ) | |
| PRUDENTIAL INSURANCE COMPANY ) | |
| OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT RITE AID'S MOTION
TO EXCLUDE EVIDENCE AND TESTIMONY OF EXPERT RODNEY RICHMOND**

Defendant Rite Aid's motion to exclude evidence and testimony of Plaintiff James Buser's expert, Rodney Richmond, should be denied. Richmond is qualified to provide the opinions contained in his Report and to testify consistent with those opinions. Richmond's Report and testimony are reliable and relevant and will assist the trier of fact in determining the outcome of this case. Richmond's Report and testimony do not reach improper legal conclusions and do not encroach on the province of the jury; are not unfairly prejudicial to Rite Aid; and will not waste the time of the jury. The probative value of the Report and Richmond's testimony outweighs the danger of any unfair prejudice or risk of time being wasted. Rite Aid's objections to Richmond's Report or testimony go to the credibility and weight of the evidence, not to admissibility.

## I. Summary of Facts

Buser, who was formerly employed as a staff pharmacist by Rite Aid, sued Rite Aid for violations of the Americans with Disabilities Act, 42. U.S.C. 12101, *et. seq.* and the Employment Retirement Income Security Program, 29 U.S.C. § 1001 *et. seq.* *See* Docket No. 59 (Third Amended Complaint). Buser also sued Prudential Insurance Company of America for violations of ERISA. *See id.* Buser alleges Rite Aid failed to accommodate his disabilities, which limited his ability to immunize customers and to stand for more than eight hours per day; and discriminated against him because of his disabilities and his requests for accommodation. *See id.*

Rodney Richmond received a Bachelor's of Science in Pharmacy from West Virginia University in 1985. *See* Exhibit 1, Richmond's Expert Report, at 14. Richmond received a Master of Science in Pharmacy from the University of North Carolina at Chapel Hill in 1992. *See id.* Richmond is a licensed pharmacist in Arkansas, Pennsylvania, West Virginia, and North Carolina, and was formerly licensed in Connecticut. *See id.* at 18. Richmond's pharmaceutical residency was at North Carolina Memorial Hospital in Chapel Hill, North Carolina in the Department of Pharmacy. *See id.* at 14. He has been a Certified Geriatric Pharmacist by the Commission on Geriatric Pharmacy since 2011, and previously held that certification from 2002 to 2007. *See id.*

Richmond is the Director for the Center for Drug and Health Information at Harding University in Searcy, Arkansas. *See id.* at 15. Richmond is an Associate Professor in the Department of Pharmacy Practice at Harding University. *See id.* He teaches and lectures on the neuropharmacotherapy and pathophysiology of Parkinson's disease and chronic pain, and he is thus familiar with Parkinson's. *See id.* at 4. These courses involve drug therapy for Parkinson's disease and also examine how Parkinson's affects the body. *See* Ex. 2, April 7, 2014 Deposition of Rodney Richmond, at 60:11-61:3. Richmond last taught these courses in January or February

2

2014.  *See id.* at 61:4-9.  Richmond is a certified and licensed immunizing pharmacist and has completed the APhA Pharmacy-Based Immunizations Delivery certificate training program, as well as American Heart Association CPR/AED training.  *See* Ex. 1 at 2

In developing the opinions in his report, Richmond consulted Buser's medical records from Drs. Hull and Benedict; Buser's employment records from Rite Aid; email communications between Buser and Rite Aid; Buser's interrogatory answers; and Buser's Complaint.  *See id.*  In analyzing Buser's essential duties and responsibilities as a pharmacist at Rite Aid, Richmond first examined the Rite Aid job description for pharmacists in effect when Rite Aid fired Buser; he then consulted the Department of Labor's Dictionary of Occupational Titles and the Occupational Information Network.  *See id.* at 3.  To evaluate Buser's competence, Richmond looked at the "qualifications" in Rite Aid's 2011 job description and analyzed Buser's credentials, including his education, licenses, and certifications.  *See id.* at 4.

Richmond then relied upon his experience as a pharmacist and a certified immunizer, as well as his knowledge arising that experience, to evaluate possible accommodations that Rite Aid might have offered to Buser at the time of his termination in 2011.  *See id.* at 5-10.  Those included a modified workflow, a pharmacist partner or intern to administer injections during Buser's shift, an ergonomic arm support, and several alternative injection/delivery methods.  *See id.*

**II. The Federal Rules of Evidence and precedent strongly favor the admission of expert testimony; reliable and relevant testimony must be permitted.**

Rule 702 of the Federal Rules of Evidence states the following:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

3

b)  the testimony is based on sufficient facts or data;

    c)  the testimony is the product of reliable principles and methods; and

    d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also United States v. Stanley*, 553 Fed. App'x. 325, 326-27 (4th Cir. 2013).

A District Court plays the role of a "gatekeeper" in determining the admissibility of expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 261 (4th Cir. 2005). A District Court must permit expert testimony that is both reliable and relevant. *See Daubert v. Merrell Dow Pharmacy, Inc.*, 509 U.S. 579, 589 (1993).

A witness must be qualified to give an opinion as an expert by "knowledge, skill, experience, training, or education." *See* Fed. R. Evid. 702. Whether a witness is qualified is determined by the "nature of the opinion he offers." *See Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984). To exclude a witness as unqualified, the "purported expert must have neither satisfactory knowledge, skill, experience, training, nor education on the issue for which the opinion is proffered." *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989).

Rule 702's requirement that expert testimony and evidence "assist the trier of fact" is a test of relevance. *See Daubert*, 509 U.S. at 591. Evidence is relevant if "it has a tendency to make a fact more or less probable than it would be without evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401; *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014). The relevance bar is relatively low. *See Zayyad*, 741 F.3d at 459. Expert evidence and testimony must "aid the jury or trier of fact to understand or resolve a fact at

issue." *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). Expert testimony not relating to any facts at issue is not relevant and is thus unhelpful. *See Daubert*, 509 U.S. at 591; *see also United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006). Testimony from experts is presumed helpful unless it is within the common, everyday knowledge of lay jurors. *See Kopf v. Skyrm*, 993 F.3d 374, 377 (4th Cir. 1993); *see also United States v. Harris*, 995 F.3d 532, 534 (4th Cir. 1993).

An inquiry into whether an opinion is based upon "sufficient facts or data" calls for a "quantitative rather than qualitative analysis" which "requires that the expert testimony be based on sufficient underlying 'facts or data.'" *See* Fed. R. Evid. 702 Adv. Comm. Notes. The Advisory Committee Notes point out that "when facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts." *See id.* The requirement that an expert's opinion be based on sufficient facts and data "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *See* Fed. R. Evid. 702; *see also Consol. Insured Benefits, Inc. v. Conseco Med. Ins. Co.*, 2006 WL 3423891 at *16 (D.S.C. Nov 26, 2006). A court, in determining admissibility, does not evaluate the qualitative reliability of such facts (as such questions go weight and credibility), but only the amount of data which the expert's methodology demands. *See United States v. Crabbe*, 556 F.Supp.2d 1217, 1223 (D. Co. 2008).

*Daubert* lays out four non-exhaustive and non-dispositive factors for determining the reliability of scientific, technical, or otherwise specialized knowledge: 1) whether the theory or technique used has been tested; 2) whether peer review of the technique is possible and has occurred; 3) whether there are standards that control the techniques used; and 4) whether there is a "general acceptance" of the technique. *See Daubert*, 509 U.S. at 593-94. A District Court's

5

inquiry under Rule 702 is a flexible one, and it must focus "solely on principles and methodologies, not on the conclusions that they generate." *See id.* at 594-95. The "gatekeeping" function has been extended to all expert testimony, not just that which is scientific in nature. *See Kumho Tire Co., Ltd.*, 526 U.S. at 149.

The "particular circumstances of the particular case at issue" weigh heavily in a District Court's determination of the reliability of expert evidence and testimony. *See id.* at 150. A judge has considerable leeway in determining the reliability of expert testimony. *See id.* at 152. The Fourth Circuit has stated that, "A district court's reliability determination does not exist in a vacuum, as there exist meaningful differences in how reliability must be examined with respect to expert testimony that is primarily experiential in nature as opposed to scientific." *See United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). If relying heavily upon experience, an expert witness must "explain how her experience leads to the conclusion reached, why her experience is a sufficient basis for the opinion, and how her experience is reliably applied to the facts." *See id.*; *see also SMD Software, Inc. v. EMove, Inc.*, 945 F.Supp.2d 628, 644 (E.D.N.C. 2013).

Rejection of expert testimony is the exception, not the rule. *See* Fed. R. Evid. 702 Adv. Comm. Notes; *see also SMD Software, Inc.*, 945 F.Supp.2d at 634-35. "Vigorous cross-examinations, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Daubert*, 509 U.S. at 595. A court "should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence," while also considering whether such evidence, given its highly persuasive nature, "has a greater potential to mislead than to enlighten." *See Westberry*, 178 F.3d at 261.

6

### A. Richmond is qualified and his Report and testimony will assist the trier of fact.

A witness may be qualified as an expert by "knowledge, skill, experience, training, or education." *See* Fed. R. Evid. 702. Richmond is a registered pharmacist in four states. *See* Ex. 1 at 18. He is a certified immunizing pharmacist. *See id.* at 2. He has been a pharmacist for nearly 30 years. *See id.* at 14. He is the Director for the Center for Drug and Health Information at Harding University. *See id.* at 15. Because his job at the Center for Drug and Health Information involves tracking new drugs and devices as they are released, he was aware of at least one of the alternative injection methods he evaluates in his report. *See* Ex. 2 at 149:22-150:13. Richmond has knowledge, skill, experience, training, and education that qualify him to render opinions regarding a pharmacist's duties and the methods by which those duties may be performed.

Expert evidence must be relevant and assist the trier of fact to resolve facts at issue. *See Daubert*, 509 U.S. at 591; *see also Westberry,* 178 F.3d at 260. As noted above, expert evidence is presumed to be admissible, unless such evidence falls within the common knowledge of jurors. *See Kopf*, 993 F.3d at 377; *see also Harris*, 995 F.3d at 534.

An essential question that the trier of fact will have to determine in this case is whether Buser was "qualified." *See, e.g., Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013). To make that determination, the trier of fact will have to consider whether Buser could perform his essential functions "with or without reasonable accommodation." *See* 42 U.S.C. § 12111(8); *see also Blackburn v. Trs. of Guilford Technical Cmty. Coll.*, 733 F.Supp.2d 659, 664 (M.D.N.C. 2010) (citing 42 U.S.C. § 12111(8)). Another essential question for the trier of fact is whether Rite Aid "refused to make a reasonable accommodation." *See Wilson*, 717 F.3d at 345.

7

In order to determine the existence of a possible reasonable accommodation, the trier of fact must consider whether modifications or adjustments to the work environment, or to the manner or circumstances under which the position is customarily performed, would have enabled Buser to perform the position's essential functions. *See* 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(o)(1)(ii); *see also, e.g.*, *Dones v. Donahoe*, 2013 WL 6551335 at *7 (D. Md. 2013) (citing 29 C.F.R. § 1630.2(o)(1)(ii)). To make that determination, the trier of fact must consider whether a possible accommodation may have imposed "undue hardships." *See* 42 U.S.C. § 12111(10); 29 C.F.R. § 1630.9; *see also EEOC v. Life Tech.Corp.*, 2010 WL 4449365 at *3 (D. Md. 2010).

Richmond possesses the requisite knowledge, skill, experience, training, and education to render helpful opinions to the trier of fact in making each of these determinations. Richmond is a licensed pharmacist who is trained to administer immunizations. *See* Ex. 1 at 2, 18. He has been a pharmacist for nearly thirty years and is a licensed pharmacist in four states. *See id.* at 14. He is an Associate Professor of Pharmacy and the Director for the Center for Drug and Health Information at Harding University. *See id.* at 15. Richmond used his knowledge and experience, applied to his review of many documents related to Buser's case, to formulate his opinion on whether Buser was qualified and whether reasonable accommodations existed. *See id.* at 3-10. Richmond's knowledge of a pharmacist's job functions, and available methods for performing injections, are not within the common knowledge of jurors. Richmond is qualified to give his opinions, and those opinions will provide valuable assistance to the trier of fact.

### B. Richmond's Report and testimony are based on sufficient facts and data.

The test for "sufficient facts and data" is a "quantitative rather than qualitative analysis" which "requires that the expert testimony be based on sufficient underlying 'facts or data.'" *See* Fed. R. Evid. 702 Adv. Comm. Notes. In preparing his Report, Richmond reviewed Buser's medical records; Buser's Rite Aid employment records; emails between Buser and Rite Aid; Buser's interrogatory answers; and Buser's Complaint. *See* Ex. 1 at 2. Richmond consulted the Department of Labor's Dictionary of Occupational Titles and the Occupational Information Network. *See id.* at 3; *see also* Ex. 2 at 55:2-56:16. He drew upon his nearly 30 years of experience as a pharmacist and his extensive knowledge of the field and methods of performing injections.

Rite Aid notes that Buser testified that he did not speak with Richmond. *See* Rite Aid's Memorandum (Dckt. #74) at 6. This observation goes to the weight and credibility of Richmond's evidence, not its admissibility. Richmond based his opinions on sufficient data and facts to satisfy the quantitative analysis required to determine admissibility.

### C. Richmond's Report and testimony employ reliable principles, methods, and experience that are applied reasonably to the facts of this case.

Rule 702 requires expert testimony be based on reliable principles and methods that are applied reasonably to the facts of the case. *See* Fed. R. Evid. 702(c)-(d). As noted, the *Daubert* factors for determining reliability (testing of the technique or theory, peer review, controls of the techniques, or "general acceptance") are neither exhaustive nor dispositive. *See Daubert*, 509 U.S. at 593-94. A district court's "gatekeeping" inquiry must focus on the "particular circumstances" and a judge has considerable leeway in determining admissibility. *See Kumho Tire*, 526 U.S. at 149-52; *see also Wilson*, 484 F.3d at 274; *SMD Software, Inc.,* 945 F.Supp.2d at 644 (judge has more leeway in determining reliability when expert relies on means that are

9

more experiential than scientific). An expert relying mostly on experience must explain how that experience is a sufficient basis for his opinion, and how he reliably applied his experience to the facts. *See Wilson*, 484 F.3d at 274.

In this context, it must be noted, again, that Richmond has been a pharmacist for nearly 30 years and is licensed in four states; he relied on relevant documents including medical and employment records, emails, interrogatory answers, and the Complaint; he examined Rite Aid's pharmacist job description and consulted other occupational references. *See* Ex. 1 at 2-3.

Upon comparing the Rite Aid job description to the standards for the Department of Labor, and using his own knowledge and experience, Richmond concluded that Rite Aid did not place any extraordinary demands on Buser. *See id.* at 3; *see also* Ex. 2 at 69:5-23 (Richmond determined Rite Aid did not require Buser to perform duties beyond those of a typical dispensing pharmacist). Richmond also used his knowledge and experience to determine that immunizations had become a regular duty of pharmacists, though that growing trend was still relatively new in 2011. *See* Ex. 2 at 70:3-71:11.

Richmond used a similar approach in evaluating Buser's competency. Richmond first examined the "qualifications" section of the Rite Aid job description, which required a pharmacy degree, a valid pharmacist license, a valid immunization certificate, a valid immunization license, language and mathematical skills, reasoning ability, and other qualities. *See* Ex. 1 at 4. Richmond then found that Buser's credentials met Rite Aid's qualifications and that there was no evidence that Buser did not meet the minimum qualifications. *See id.*

Richmond's Report identifies a number of possible accommodations, including a modified workflow; a pharmacist partner or intern administering injections; the use of an ergonomic arm support; and alternate vaccine delivery systems including an intradermal injector,

10

nasal spray vaccinations, and a needle-free injector. *See id.* at 6-9. Richmond knew, based on his experience, including his teaching of pharmacy students, that an intern may administer injections with proper supervision. *See* Ex. 2 at 115:25-116:23. Richmond knew, based on his knowledge and experience working in pharmacy education, that pharmacy schools typically train students to perform immunizations by their third year of school. *See id.* at 118:6-24. Richmond knew, based on his specialized knowledge and experience working with Parkinson's patients and teaching students how to treat Parkinson's, that "purposeful motion" can help correct Parkinson's tremors; and he suggested an ergonomic arm support as an accommodation for Buser consistent with that specialized knowledge and experience. *See id.* at 127:21-128:25.

Richmond based his opinion that an intradermal injection may have allowed Buser to administer vaccines on his specialized knowledge and experience, as he knew that such injectors do not require the fine motor skills needed for tradition injections. *See id.* at 131:21-132:22. Richmond was familiar with nasal immunizations and, based on his experience giving immunizations, knew that intradermal and intranasal immunizations could likely be performed with the immunizer's non-dominant hand (while most immunizers cannot administer an intramuscular injection with their non-dominant hands). *See id.* at 132:23-133:11. Richmond identified the possible accommodations in his report because he knew, based on his own specialized knowledge and experience, that they were available. *See id.* at 133:12-14; *see also* 149:22-150:13 (Richmond had knowledge of the intradermal injection system because he tracks new drugs and devices as they are released as part of his job at Harding University's Drug Information Center).

In forming his opinions, Richmond examined documents; used his knowledge and experience gleaned from working and teaching in the pharmacy field for nearly 30 years; and

11

used his training in administering immunizations. And he applied his specialized knowledge and experience in a reasonable manner. Thus, his opinions are substantiated. While his opinions may not be "tested" in the same manner that some scientific information might be tested, Richmond nonetheless adequately explained how his experience led to his conclusions, showed that his experience is a sufficient basis for his opinions, and explained how he reliably applied his experience. *See*, *e.g.*, *Wilson*, 484 F.3d at 274.

### D. The exclusion of evidence under Rule 702 is the exception, not the rule.

While courts must balance the liberal approach to admissibility of expert evidence with the fact that expert evidence may mislead instead of enlighten, rejection of expert testimony is the exception, not the rule. *See, e.g., Westberry*, 178 F.3d at 261; Fed. R. Evid. 702 Adv. Comm. Notes; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997) (decisions to admit or exclude expert evidence are reviewed under abuse of discretion standard). "Vigorous cross-examinations, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Daubert*, 509 U.S. at 595. An inquiry into the admissibility of expert evidence must examine the principles and methodologies, not the conclusions. *See id.* at 595.

Richmond's expertise and specialized knowledge will help the trier of fact to evaluate key elements of Buser's claim. Rite Aid may disagree with Richmond's conclusions, but he based them on sufficient facts and data. To the extent that Rite Aid disagrees with the conclusions or contends they will somehow mislead the trier of fact, Rite Aid will have ample opportunity to challenge the opinions, and their bases, in a vigorous cross-examination at trial, as envisioned by *Daubert*.

### III. Richmond's Report and testimony do not reach improper legal conclusions and do not encroach on the province of the jury.

Rule 704(a) of the Federal Rules of Evidence states, in part, that "an opinion is not objectionable just because it embraces an ultimate issue." *See* Fed. R. Evid. 704. "[Q]uestions of fact that are committed to resolution by the jury are the proper subject of opinion testimony." *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). An expert's testimony that "states a legal standard or draws a legal conclusion by applying law to facts" is generally not admissible. *See id.* at 562. An expert may testify to facts that support a legal standard, but not to whether the legal standard has been met. *See id.* at 561-62; *see also Burkart v. Washington Metro. Area Transit Auth.*, 112 F.3d 207, 1212-13 (D.C. Cir. 1997).

Terms used by a witness that "have a separate, distinct, and specialized meaning in the law different from that present in the vernacular" may be excluded. *See McIver*, 470 F.3d at 562. But even if an expert witness uses terms that are similar to legal terms, those terms are admissible if they fall within a "limited vernacular" available to the witness. *See id.* In *McIver*, an expert doctor's use of terms such as "illegitimate" and "inappropriate" in giving an opinion about a doctor's standard of care were admissible because a limited vernacular was available to describe a doctor's performance. *See id.*

#### A. Richmond does not offer legal conclusions or opinions in his report.

Richmond did not draw legal conclusions in his report. Richmond explained that that the purpose of the Report is two-fold: [1] "to assess Buser's ability to perform the essential duties and [2] to identify reasonable accommodations that could be have been implemented in 2011." *See* Ex. 1 at 2. He did not offer legal opinions about the ADA in his report. *See* Ex. 2 at 92:21-93:7. When deposed, he testified that he was not offering a legal opinion about whether Buser

13

was disabled under the ADA, and he did not review or research the ADA's definition of disability. *See id.* at 162:7-163:3.

On Page 3 of his Report, where Richmond discussed the "essential duties and responsibilities" of a pharmacist, he was only attempting to determine whether Rite Aid placed any burdens on Buser beyond those placed on typical pharmacists. *See id.* at 69:5-23. When Richmond said in his Report that Buser was properly qualified and trained, he was referring only to Buser having the required certifications and training. *See id.* at 73:1-8. When Richmond used the term "reasonable accommodation" in his report, he used it in the context of what was reasonable based on his own knowledge and experience as a pharmacist. *See id.* at 96:24-97:4. In none of these contexts did Richmond offer legal conclusions or legal opinions. Instead, he provided opinions based on his specialized experience and training as a pharmacist, working and teaching in the field.

Moreover, any use by Richmond of "legal terms of art" owes to a limited vernacular available to him. As explained above, Richmond used his experience and knowledge of the field of pharmacy, as well as numerous documents relating to the case, to evaluate whether Buser was capable of performing the duties and responsibilities of the job. *See* Ex. 1 at 3. Richmond determined that no greater burdens were being placed on Buser than on typical pharmacists; and that Buser's credentials met the minimum qualifications required by Rite Aid. *See id.* While Richmond used language similar to or the same as "legal terms of art" applied to the ADA, he did so because describing someone as "qualified" within a field or labeling duties as "essential" fall within a limited vernacular available to him.

The same is true of Richmond's use of the term "reasonable accommodation." Richmond labels the various accommodations discussed in his Report as "examples of reasonable

14

accommodations." *See id.* at 6. Richmond then lists numerous examples of such possible "accommodations," including alternate injection methods. *See id.* at 5-9. When deposed, Richmond testified that he was attempting to examine Buser's limitations and ways to address those limitations, and that **he was evaluating what was reasonable based on his specialized knowledge and experience as a pharmacist**. *See id.* at 88:10-23 (emphasis added), 97:16-23.

In evaluating possible accommodations, Richmond provides expert testimony that assists the trier of fact in making an ultimate legal determination. Like "qualified" and "essential duties," the term "reasonable accommodation" has a common meaning in addition to a legal one, and is part of a limited vernacular available to Richmond.

### IV. Richmond's Report and testimony are not unfairly prejudicial and will not mislead a jury.

Rule 403 of the Federal Rules of Evidence allows otherwise relevant evidence to be excluded if "its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403. Rule 403 generally favors the admissibility of evidence. *See, e.g., United States v. Udeozor*, 515 F.3d 260, 264-65 (4th Cir. 2008). Unfair prejudice is "a genuine risk that that emotions of the jury will be excited to irrational behavior." *See id.* at 264; *see also United States v. Mohr*, 318 F.3d 613, 618 (4th Cir. 2003. The risk must be "disproportionate to the probative value of the offered evidence." *See Mohr*, 318 F.3d at 618. Mere "damage to a defendant's case" is not unfairly prejudicial; all probative evidence may necessarily be prejudicial to a party's case. *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998).

Richmond's Report is relevant evidence regarding Buser's qualifications and possible accommodations for the reasons already discussed. His Report and testimony are highly

15

probative in assessing the essential elements of his claim. Richmond's evidence may be to Rite Aid in that it tends to show Rite Aid refused to accommodate Buser's disability, but a mere injury to Rite Aid's case is not sufficient to show "unfair prejudice." *See Grimmond*, 137 F.3d at 833. The probative value of this evidence is not outweighed by any prejudice. And Rite Aid will have ample opportunity to challenge Richmond's findings.

### V. Questions about Richmond's Report and testimony concern the weight and credibility of the evidence, not its admissibility.

Rule 104(e) of the Federal Rules of Evidence allows parties to introduce "evidence that is relevant to the weight or credibility of other evidence." *See* Fed. R. Evid. 104(e). *Daubert* teaches that "vigorous cross-examinations, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Daubert*, 509 U.S. at 595. In determining admissibility, a court must focus on the principles and methodology of an expert, not the expert's conclusions. *See id.* The Fourth Circuit has held that "[i]f the *Daubert* tests of qualification and reliability are met, **weight and credibility determinations go to the jury**." *See Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1385 (4th Cir. 1995); *see also Tunnell*, 330 F.Supp.2d at 747 (finding accuracy of expert's conclusions was a jury question).

Richmond is qualified to testify as an expert in the profession of pharmacy, and that expertise extends to job duties and possible accommodations. His specialized knowledge goes beyond the common knowledge of a lay jury, and the trier of fact will be assisted by his Report and testimony. He relied on substantial data and facts, and he employed his knowledge and expertise reasonably. Rite Aid's disagreement with Richmond's conclusions does not make his evidence inadmissible. Rite Aid will have the opportunity to challenge the weight and credibility

16

of Richmond's Report and testimony before the jury. Questions about the accuracy of the evidence presented are for the jury to answer.

## Conclusion

Rodney Richmond is qualified to offer expert opinions about Buser's ability to perform the job duties of a pharmacist, and possible accommodations for Buser that could have been made by Rite Aid. He is qualified as an expert based on his nearly 30 years of experience working and teaching in the field of pharmacy. He relied on substantial facts and data, and he applied his experience and specialized knowledge to the facts. He did not reach improper legal conclusions. The highly probative value of his Report and testimony are not substantially outweighed by the dangers of unfair prejudice or the risk of misleading the jury. Any questions about the accuracy of Richmond's Report or testimony go to the weight and credibility of the evidence and not to its admissibility. This court should deny Rite Aid's motion to exclude Richmond's Report and testimony.

Respectfully submitted,

/s/ John T. Harrington
John T. Harrington, VA Bar No. 76008
R. Scott Oswald, VA Bar No. 41770
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)

/s/ Michael C. Byrne
Michael C. Byrne
Law Offices of Michael C. Byrne, PC
Wachovia Capitol Center, Suite 1130
150 Fayetteville Street
Raleigh, NC 27601
Phone (919) 865-2572
michael@mcbyrnelaw.com

Local Civil Rule 83.1 Counsel
NC Bar #22690


      /s/ Patricia A. Smith
Patricia A. Smith, VA Bar No. 26090
500 Montgomery Street, Suite 400
Alexandria, Va. 22314
(703) 548-3774
Fax: (703) 859-7640
pasmithaty@aol.com

*Counsel for Plaintiff*

18

Case 5:12-cv-00755-FL Document 79 Filed 06/02/14 Page 18 of 20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's Opposition to Defendant Rite Aid's Motion to Exclude Evidence and Testimony of Expert Rodney Richmond was served on this 2d day of June 2014 via this court's electronic filing system upon:

Gretchen Ewalt, NC Bar No. 15847
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
(919) 787-9700
(919) 783-941 (facsimile)
gretchen.ewal@ogletreedeakins.com

Kristy G. Offitt, GA Bar No. 707231
Beth Moeller, GA Bar No. 100158
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
404.881.1300
404.870.1732 (facsimile)
kristy.offitt@ogletreedeakins.com
beth.moeller@ogletreedeakins.com

*Counsel for Defendant Rite Aid*

Dan McCord Hartzog , Jr.
dhartzogjr@cshlaw.com
CRANFILL SUMNER & HARTZOG, LLP
P. O. Box 27808
5420 Wade Park Blvd., Suite 300
Raleigh, NC 27611-7808
(919) 828-5100
(919) 828-2277 (facsimile)

Sam Schwartz-Fenwick
sschwartz-fenwick@seyfarth
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400

Chicago, Illinois 60603
(312) 460-5000
(312) 460-7000 (facsimile)

*Counsel for Defendant Prudential Insurance Company of America*

                                        /s/ John T. Harrington

                                    John T. Harrington