IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-755-FL

| | | |
|---|---|---|
| JAMES BUSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ECKERD CORPORATION d/b/a/ RITE | ) | |
| AID, a subsidiary of RITE AID | ) | ORDER |
| CORPORATION; and PRUDENTIAL | ) | |
| INSURANCE COMPANY OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on the parties' cross-motions for summary judgment. (DE 83, 85, 87). The issues raised have been fully briefed and are ripe for ruling. For the reasons stated more specifically herein, the court grants in part and denies in part both plaintiff's partial motion for summary judgment and the motion for summary judgment of defendant Eckerd Corporation, d/b/a Rite Aid Pharmacy, a subsidiary of Rite Aid Corporation ("Rite Aid"). The court grants the partial motion for summary judgment of defendant Prudential Insurance Company of America ("Prudential").

## STATEMENT OF THE CASE

On November 19, 2012, plaintiff, who worked as a pharmacist for defendant Rite Aid at its Holly Springs, North Carolina location, brought this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Employee Retirement Income Security

Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.  In plaintiff's third amended complaint he alleges that

defendant Rite Aid violated the ADA by failing to reasonably accommodate his alleged disabilities,

including tremors and an inability to bend or stoop, accruing from Parkinson's disease, and a hip

condition (Count 1).  Further, he contends defendant Rite Aid retaliated against him by firing him

after he requested an accommodation for his alleged disabilities (Count 2).  Plaintiff also alleges that

defendants Rite Aid and Prudential  wrongfully denied his claim for short term disability ("STD")

benefits in violation of ERISA, or, in the alternative, breached their contract  that entitled plaintiff

to receive those benefits (Counts 3 and 5).  Plaintiff also seeks recourse against defendant Prudential

for its denial of long term disability ("LTD") benefits (Count 4).

      After a period of discovery in the case, plaintiff seeks summary judgment on Counts 1, 3,

4, and 5 in their entirety.  In addition, plaintiff seeks summary judgment on a discrete issue bearing

on Count 2.[1]  Defendant Rite Aid moves for summary judgment on all claims against it, including

Counts 1 through 3 and Count 5.[2]  Lastly, defendant Prudential seeks partial summary judgment.

---

[1]  In support of his motion for partial summary judgment, plaintiff relies on his own deposition; the deposition of Jeffrey Rup, plaintiff's direct supervisor while employed with defendant Rite Aid; the deposition of Jin Lee, a Rite Aid district manager for the Holly Springs store's district; the deposition of Shimul Patel, a part-time pharmacist previously employed at the Holly Springs, North Carolina, Rite Aid; the deposition of Amanda Glover, defendant Rite Aid's Director of Pharmacy Operations; the declaration of Alisa Jardin, a pharmacy technician in Rite Aid's Holly Springs, North Carolina, store; and various correspondence between plaintiff and Lee.  In addition, plaintiff relies on myriad reports and opinions from various medical professionals; the expert report of Rodney Richmond, a pharmacist and associate professor of pharmacy practice at Harding University College of Pharmacy; plaintiff's 2011 performance evaluation; the contracts and other documents governing defendant Rite Aid's benefits programs, including an Administrative Services Agreement ("ASA"), Rite Aid Salary Continuation Benefits Plan Brochure ("SCB Brochure"), and Group Insurance Contract; and a thorough copy of his application for STD and LTD benefits, as well as the associated administrative record.

[2]  In support of its motion, defendant Rite Aid also relies on the depositions of Buser, Rup, Lee, and Patel.  In addition, defendant Rite Aid relies on the deposition and declaration of Michael Strauss, Rite Aid's Human Resources District Manger, and previously  the Associate Relations Manager for the district encompassing the Rite Aid store in which plaintiff was employed; and the deposition and declaration of Jessica Kazmaier, defendant Rite Aid's current Vice President of Total Rewards and previous Director of Benefits.

Specifically, defendant Prudential moves for summary judgment on Count 4, wrongful denial of LTD benefits. It does not, however, seek summary judgment on Counts 3 or 5.[3]

## STATEMENT OF UNDISPUTED FACTS

Plaintiff was a staff pharmacist at defendant Rite Aid's Holly Springs, North Carolina, location until September 8, 2011, when he was terminated. At the time of his termination, plaintiff had been employed by defendant Rite Aid, or a predecessor of Rite Aid, since at least 1987. (Buser Dep. 20:25-21:3). He had been employed at the Holly Springs location since 2000. As a staff pharmacist it was plaintiffs' job to read and enter prescriptions, verify drugs and directions, call physicians for clarification as needed, consult with customers, call insurers and handle other issues that arose in the pharmacy. (Buser Dep. 42:16-25 & Ex. 41). In early 2011, defendant Rite Aid added a new job responsibility and began requiring all pharmacists to administer immunizations. (Compl. ¶¶64-65).

Defendant Rite Aid is a large retail pharmacy. It owns approximately 4,500 stores, which employ approximately 10,000 pharmacists. (Strauss Decl. ¶3). Defendant Rite Aid offers unemployment benefits to its employees in the form of STD and LTD benefits. (SCB Brochure, DE 88-41; Group Insurance Contract, DE 88-42). Those plans are administered by defendant Prudential consistent with the terms of the ASA, a contract between defendants establishing defendant Prudential as the claims administrator. (See ASA, DE 88-55). Defendant Prudential also insures defendant Rite Aid's LTD benefit program. However, defendant Rite Aid's STD benefits program is uninsured and paid out of defendant Rite Aid's general assets. (Kazmaier Decl. ¶4).

---

[3] In support of its motion, defendant Prudential relies on plaintiff's deposition; plaintiff's application for STD and LTD benefits and the associated administrative record; as well as the contracts and other documents governing defendant Rite Aid's benefits programs.

During plaintiff's employment with defendant Rite Aid, he experienced a number of physical impairments including tremors, high blood pressure, mild colitis, ankylosing spondylitis, difficulty hearing, drowsiness, and osteoarthritis. (Buser Dep. 23:9-10; see also DE 88-20, 21, 22). Of particular importance to the instant case are plaintiff's tremors and osteoarthritis. With respect to his tremors, plaintiff experienced symptoms in both hands. (Buser Dep. 169:22-170:21). However, plaintiff's tremors were more severe in his dominant, right hand. (Id.). In 2009, plaintiff was diagnosed with Parkinson's disease, but, by December 2010, plaintiff's doctor had qualified his initial diagnosis of Parkinson's due to certain irregularities in the progression of plaintiff's symptoms. (Id. at 74:16-75:3). Pertinent to plaintiff's osteoarthritis, his condition primarily affected his hip. (DE 88-23, at 2). In May 2011, plaintiff received a left hip replacement. (Id.). Thereafter, plaintiff took a leave of absence from Rite Aid and did not return until August 2011. (Buser Dep. 40:13-16).

In 2011, plaintiff's employment with defendant Rite Aid underwent two changes relevant to the issues before the court. First, in early 2011, defendant Rite Aid began requiring its pharmacists nationwide administer certain immunizations, including the flu vaccine. (Strauss Dep. 71:8-21). Second, defendant Rite Aid adopted new pharmacy hours.

With respect to the first change, defendant Rite Aid hoped to have each pharmacist administer 150 flu vaccines by the end of the 2011 flu season. (Buser Dep. 253: 8-17). When compared with the number of prescriptions a pharmacist was expected to fill in a year, the flu shot would have accounted for less than one percent of plaintiff's job. (Id.).

Administration of immunizations was a five step process. First the patient would fill out a questionnaire. Second, the pharmacist would review the questionnaire. Third, the pharmacist used

the questionnaire to create a customer profile. Fourth, the pharmacist would bill the vaccine to insurance. And fifth, the pharmacist would administer the injection. (DE 88-23, at 2). However, before a pharmacist could be eligible to administer immunizations, he or she was required to pass an immunization certification. (DE 84-3). Defendant Rite Aid established July 2011 as the deadline to complete training. (Id.).

The course consisted of two components, each of which addressed a necessary aspect of immunization certification. (DE 88). First, each pharmacist was required to administer an immunization using a needle while under supervision. (Buser Dep. 90:13-91:1). In addition, the pharmacists were required to receive CPR certification. (Id. 90:3-20). The North Carolina Board of Pharmacy required pharmacists who administered immunizations be certified to administer CPR, in the event a patient suffered an adverse reaction. (Id. 128:2-18).

In February 2011, shortly after defendant Rite Aid announced the program to its pharmacists, plaintiff expressed concerns about his ability to administer injections to district manager Jin Lee. (Id. 89:2-24). In a series of emails, Lee told plaintiff to complete the training. Lee further told plaintiff to have his doctor write a note excusing him from administering immunizations. (Id. 75:17-21). Plaintiff did not provide Lee with a doctor's note prior to his training and successfully completed both components immunization training on April 5, 2011. (Id. 77: 13-18; 93:1-4). However, at training, plaintiff experienced tremors and had to stabilize his right hand using his left hand to properly administer the injection. (Buser Dep. 91:5-12). In addition, after his May 2011, hip replacement, plaintiff lost his ability to bend or stoop, which rendered him unable to administer CPR. (Id. 127:10-18).

Regarding the second change, beginning in August 2011, the Holly Springs location adopted new operating hours. From 2009 until August of 2011, the Holly Springs Rite Aid store had been an "extended hours" pharmacy. (Id. 31:3-10; 32:17-21). As an extended hours pharmacy, the store was regularly open 14 hours per day.[4] (Id.). But, in August 2011, the pharmacy reduced its operating hours to 12 per day. (Buser Dep. 31:13-16; 100:10-21; 161:15-18). This revised schedule mirrored the schedule employed by a majority of North Carolina Rite Aid stores and all Rite Aid stores close to the Holly Springs location. (Strauss Dep. 123:1-12).

While operating as an extended hours pharmacy, Rite Aid's Holly Springs location employed three pharmacists. (Buser Dep. 34:4-7; 35:15-20). Two of the pharmacists, including plaintiff, were full-time. (Id. 34:4-17). The other pharmacist worked part time. (Id.). The three pharmacists divided the 14 hour day such that plaintiff worked approximately six to 10 hours each day. (Id. 35:21-36:7). In 2011, since the pharmacy reduced its operating hours, the pharmacists also changed their schedules. (Id. 38:7-12). The store only required two full-time pharmacists, each of whom was to work a full 12 hour shift. (Id.; Rup Dep. 48:7-11; 50:13-16). The part-time pharmacist previously employed at the Holly Springs location was moved to a different location, which required additional help due to heavy patronage at certain times of day.

During the time period relevant to the instant matter, the Holly Springs Rite Aid also occasionally employed pharmacy interns. (Buser Dep. 25:23-26:1). A pharmacy intern is a pharmacy student in need of clinical hours, who acts under the supervision of licensed pharmacists. (Id.). Pharmacy interns did not work consistent schedules or a predetermined number of hours each week. (Buser Dep. 28:7-14; 29:9-12; Glover Dep. 32:12-18; Strauss Decl. ¶5). Their availability

---

[4]Specifically, the store was regularly open from 8:00 AM until 10:00 PM on weekdays, and from 8:00 AM until 6:00 PM and 10:00 AM until 6:00 PM on Saturday and Sunday respectively.

6

varied based on the intern's need for clinical hours and class schedule. (Buser Dep. 28:7-14; 29:9-12; Glover Dep. 32:12-18).

Regarding the instant matter before the court, in August 2011, when plaintiff returned from extended medical leave after his hip replacement, he again voiced his concerns about his ability to administer immunizations. (Buser Dep. 127:10-18). Plaintiff contended that his tremors made it frightening, and perhaps even unsafe, for him to administer immunizations using a needle. (Id. Ex. 20). Defendant Rite Aid requested plaintiff provide it with medical documentation of his tremors as well as proposed accommodations. (Id.). Plaintiff's treating physician submitted the requested documentation on August 29, 2011. (Id. 264:16-21).

Plaintiff was terminated on September 8, 2011, due to his inability to immunize. (Id. 258:10-11 & Ex. 28). At the time of his termination, plaintiff had requested three accommodations. First, plaintiff requested he be allowed to perform the ministerial tasks associated with immunizations, but be exempt from actually performing the injection. (Id. 125:3-126:1). Specifically, plaintiff requested he be allowed to complete the necessary paperwork and then schedule customers for vaccines on a different day, when the other pharmacist was working. Second, plaintiff requested that he be scheduled to work with pharmacy interns, so that the interns could administer immunizations under his supervision. (Id. 153:3-9). Finally, plaintiff requested defendant Rite Aid allow him to use an automatic injector. (Id. 172:17-174:3). Such injector would allow him to administer immunizations without the danger of an unsteady needle. (Id.). However, he still would be required to administer CPR if necessary, which he was not physically capable of doing. (Id. 131 :24-132:10).

Defendant Rite Aid declined all three of plaintiff's requested accommodations. Prior to his termination, plaintiff engaged in several conversations with Lee seeking an alternative method of CPR administration. (Id. 127:3-6). Specifically, plaintiff proposed having another employee on site to administer CPR. (Id.). However, surrogate CPR administration was prohibited by the North Carolina Board of Pharmacy at that time. (Id. 145:1-5). Eventually, the Board changed this rule to allow surrogate administration of CPR. (Id. 145:6-12).

Following his termination, plaintiff applied for STD and LTD benefits from prior to his date of termination until an unspecified period thereafter. (See Claim Denial Letters, DE 82-21, at 3, 33). As pertinent here, defendant Rite Aid offers STD benefits to employees with qualifying conditions. (SCB Brochure, at 1). The program is funded entirely by Rite Aid out of its general assets and is administered by defendant Prudential as claims administrator. (See Kazmaier Decl. ¶4). The terms of the program are set out in two documents, the SCB Brochure given to Rite Aid employees and ASA. Under the terms of both documents, defendant Prudential is responsible for reviewing and determining an applicant's eligibility. In addition, defendant Rite Aid offers LTD benefits through an insured plan, also administered by defendant Prudential, the terms of which are defined in a separate brochure and the ASA.

On or about November 1, 2011, defendant Prudential denied plaintiff's request for benefits. (DE 88-45). Defendant Prudential cited plaintiff's termination as its reason for denying benefits. (Id.). In the letter informing plaintiff of its decision, defendant Prudential notified him of his right to appeal. (Id.). Plaintiff exercised his right to appeal on or about April 27, 2012. Thereafter, he supplemented his appeal on June 12, 2012. Defendant Prudential, as well as an independent neurologist, reviewed all materials associated with plaintiff's file, and the appeal was subsequently

8

denied on July 30, 2012. (DE 88-43). The ASA provided the denial of a claim was ultimately defendant Rite Aid's decision. (ASA, at 12). Accordingly, plaintiff could have appealed the decision to defendant Rite Aid; however, he ultimately declined to do so.

## DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). When faced with cross-motions for summary judgment, the court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251; see also Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) ("[T]he court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.") (internal citations and quotations omitted).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co.

9

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S.654, 655 (1962).

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

**B.     Analysis**

**1.     Failure to Accommodate**

Under the ADA, a failure to accommodate claim requires plaintiff to show that: (1) plaintiff has a disability within the meaning of the statute; (2) defendant had notice of his disability; (3) plaintiff could have performed the essential functions of the position with a reasonable accommodation; and (4) defendant refused to make such accommodation. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Subsumed in the fourth prong of the failure to accommodate test is the obligation to engage in a good-faith interactive process to identify a

potential reasonable accommodation. Id. at 346. The parties do not dispute that defendant Rite Aid had notice of plaintiff's condition, the second element of plaintiff's failure to accommodate claim.

        **a.**      **Disability under the ADA**

Plaintiff argues at the time of his termination he was disabled within the meaning of the ADA. Although a close call, the evidence before the court creates a genuine dispute of material fact as to the first element of plaintiff's ADA claim, whether plaintiff was disabled within the meaning of the ADA.

The ADA was amended in 2008. The "primary purpose of the [2008 amendments to the ADA were] to make it easier for people with disabilities to obtain protection." 29 C.F.R. § 1630 app 29 C.F.R. §1630.2(g). Under the Amended ADA, "disability" means a physical or mental impairment that "substantially limits one or more major life activities." 42 U.S.C. § 12102(1). The major life activity must be substantially limited relative to most people in the general population. 29 C.F.R. § 1630.2. Plaintiff contends that his tremors and osteoarthritis, coupled with his hip-replacement surgery, substantially impaired a number of major life activities.

Plaintiff contends that his tremors substantially limited him in the major life activities of neurological functions; performance of manual tasks; and working. To establish the existence of a disability, plaintiff provides his own deposition; a number of emails between himself and high ranking Rite Aid employees; a narrative report of his neurologist, Dr. Kevin Hull; and reports and notes written by Hull on plaintiff's behalf.

There is a genuine dispute over the facts before the court. Plaintiff has supplied evidence he had a noticeable tremor that affected his ability to do a limited number of tasks. (Buser Dep. 81:13-17; Declaration of Aisa Jardin, DE 88-7 ¶25). However, defendant highlights plaintiff's

deposition testimony, in which he notes his tremors did not greatly affect his life in any other way. (Id. 55:6-59:21). In particular, plaintiff testified that his tremors did not cause any limitations on his day-to-day activities. (Id. 58:24-59:21). On the one hand, when viewed in the light most favorable to defendant, the evidence does not conclusively establish the existence of a disability within the meaning of the ADA. This precludes summary judgment in favor of plaintiff. On the other hand, when the evidence is viewed in the light most favorable to plaintiff, the evidence then does suggest plaintiff is disabled. Thus, precluding summary judgment in favor of defendant.

Plaintiff also contends that his osteoarthritis and his hip-replacement surgery substantially limit him in the major life activities of bending, stooping, kneeling, squatting, and working. Here, the result is the same. Plaintiff has provided a doctor's treatment records establishing his difficulty bending and stooping at the hips. (DE 88-22). However, plaintiff again testified in his deposition that he was not substantially limited in any of his daily activities. (Buser Dep. 55:12-25). Here, as before, when the evidence is taken in the light most favorable to plaintiff, the court cannot definitively state plaintiff is not disabled under the ADA. However, there exist enough conflicting evidence, when viewed in the light most favorable to defendant, to prevent the entry of summary judgment for plaintiff, as to the third element of the ADA claim.

**b.   Ability to Perform the Essential Functions of the Position with a Reasonable Accommodation.**

The third element of a failure to accommodate claim requires a showing that the employee was qualified. See Wilson, 717 F.3d at 345. An individual is qualified if, with our without a reasonable accommodation, he can perform the essential functions of his job. 42 U.S.C. § 12111(8). This element requires the court to first examine whether the function of administering injections was

essential to plaintiff's job. Next, if administering injections was an essential function, the court must determine whether that function could be performed with a reasonable accommodation.

### i.   Essential Versus Marginal Function

There is a genuine dispute on whether the function of administering injections was essential to plaintiff's job.[5] An essential function is a "fundamental job dut[y] of the employment position," but does not include "marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).  A job function may be considered essential for a number of reasons, including: (1) the position exists to perform that function; (2) there are a limited number of employees to whom the function can be distributed; and (3) the function is so specialized that the incumbent employee was hired for his or her expertise or ability to perform it.  Id. § 1630.2(n)(2).

"Whether a particular function is essential is a factual determination that must be made on a case by case basis." 29 C.F.R. § 1630 app.  29 C.F.R. § 1630.2(n).  When considering whether a function properly may be characterized as essential or marginal, the court may consider:

(i)    The employer's judgment as to which functions are essential;
(ii)   Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii)  The amount of time spent on the job performing the function;
(iv)   The consequences of not requiring the incumbent to perform the function;
(v)    The terms of a collective bargaining agreement;
(vi)   The work experience of past incumbents in the job; and/or
(vii)  The current work experience of incumbents in similar jobs

among other relevant evidence.  29 C.F.R. § 1630.2(n)(3).

---

[5]While plaintiff bears the ultimate burden of demonstrating he could perform all essential functions with a reasonable accommodation, defendant bears the burden of proving administration of immunizations is an essential function.  See  Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 35 (1st Cir. 2000); Monette v. EDS Corp., 90 F.3d 1173, 1182 n.8, 1184 (6th Cir. 1996); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995); cf. Stone v. City of Mount Vernon, 118 F.3d 92, 99-100 (2d Cir. 1997) (discussing evidence presented by defendant employer on the issue of "essential function"); White v. York Intern. Corp., 45 F.3d 357, 362 (10th Cir. 1995).

Defendant contends immunization is an essential job function because 1) only two employees at the Holly Springs location could administer immunizations, 2) it deemed administration of immunizations to be essential, 3) it had prepared a written description noting that it was essential[6], and 4) other pharmacists in the retail-pharmacy industry were expected to administer immunizations. Plaintiff, on the other hand, contends that the insignificant amount of time spent administering immunizations, relatively low target number of immunizations compared with number of prescriptions to be filled, and the work experience of past incumbents of his position, necessitate a finding that administration of immunizations was not an essential function.[7]

The evidence viewed in the light most favorable to plaintiff creates an issue of fact as to whether immunization was essential. However, there exists sufficient evidence, when viewed in the light most favorable to defendant, to preclude a definitive determination that administration of injections was not essential. Thus, where a material and disputed fact exists as to the "essential" nature of defendant's vaccine requirement, the cross-motions for summary judgment are denied on this point.

---

[6]Plaintiff suggests that defendant cannot rely on its 2011 job description, because it was not in place when the job was advertised to plaintiff or when plaintiff interviewed for the job. The regulations do not require such a stringent standard. Instead, the regulation allows as evidence a written job description used to define the parameters of the job. See 29 C.F.R. § 1630.2(n)(3)(ii). Here, the job description in place at the time of plaintiff's termination undisputedly required pharmacists to administer immunizations.

[7]The court notes the existence of two pending motions to exclude expert testimony filed by defendant. (DE 71, 73). With regard to defendant's first motion to exclude the testimony of Jean Hutchinson, (DE 71) the court reserves ruling on this matter, as it is not relied upon by the parties in support for the instant motions.

With respect to defendant's second motion, to exclude the expert testimony of plaintiff's expert Rodney Richmond, (DE 73), the court again reserves ruling on the matter. As Richmond's testimony relates to the essential versus marginal nature of immunization, the court concludes that his testimony, accepted as true, does nothing to resolve the genuine dispute of material fact that exists on the issue. For example, in a portion of his report Richmond compares plaintiff's job responsibilities to those defined by the United States Department of Labor. (DE 88-18, at 6). However, it does not address the other criteria outlined by the regulations, most especially, defendant's judgment as to the essential nature of the functions and the existence of a job description listing immunization as an essential function. See 29 C.F.R. § 1630.2(n).

## ii.    Ability to Perform with a Reasonable Accommodation

The court next turns to defendant's argument that plaintiff cannot perform the essential functions of his position with a reasonable accommodation, in the event immunization is deemed to be an essential function.  For the reasons discussed below, defendant's motion for summary judgment will be granted as to this limited issue.

In his brief, plaintiff proposes a number of accommodations, all of which he argues are reasonable.  In particular, plaintiff proposes: (1) shifting the duty to immunize from himself to pharmacy interns or other pharmacists; (2) using an arm support device to steady his tremors; (3) using alternative means of injection; and (4) not requiring him to administer immunizations and commensurately reducing his hours or compensation.  The court addresses each of these proposed accommodations in turn.

Under the ADA, employers are required to make "reasonable accommodations."  By implication, employers are not required to make unreasonable accommodations.  A reasonable accommodations is a "[m]odification[] or adjustment[] to the work environment, or to the manner or circumstances under which the position held or desired is currently performed, that enable[s] [a qualified individual] to perform that position." 29 C.F.R. § 1630.2(o)(1)(ii).  Reasonable accommodations may include alterations to existing facilities, or "[j]ob restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modification of equipment or devices; . . . and other similar accommodations for individuals with disabilities." Id. § 1630.2(i)(2)(i) & (ii).

Turning to plaintiff's first proposed accommodation, plaintiff argues defendant Rite Aid could have paired him with a pharmacy intern or required the other pharmacist to administer

15

injections.  Assuming immunization is an essential function, plaintiff essentially argues defendant

Rite Aid is obligated to reallocate that essential function to other employees.  This type of job

restructuring is not contemplated by the regulations.  An employer or other covered entity is not

required to reallocate essential functions.  See Martinson v. Kinney Shoe Corp., 104 F.2d 683, 687

(4th Cir. 1997).  The ADA requires neither a reduction to a disabled employee's job responsibilities,

see Carter v. Tisch, 822 F.2d 465, 467 (4th Cir. 1987) (holding no obligation to assign an employee

to "permanent light duty"), nor an "additional person to perform an essential function of a disabled

employee's position."  Martinson,104 F.2d at 687.

Next the court turns to plaintiff's requests for either an arm support apparatus or an

alternative means of administering injections.  Under the circumstances, these accommodations are

unreasonable as a matter of law.  While these accommodations may allow plaintiff to administer

immunizations, or provide a safe alternative to traditional immunizations, they do not resolve all

issues relating to plaintiff's ability to immunize.  As discussed earlier, plaintiff contends he cannot

immunize due to his inability to bend if necessary to administer CPR.[8]

A reasonable accommodation is an accommodation "which presently, or in the immediate

future, enables the employee to perform the essential functions of the job in question."  Myers v.

Hose, 50 F.3d 278, 283 (4th Cir. 1995).  There is no requirement that an employer accommodate an

employee "with the hope that at some unknown time in the future he will be able to satisfy the

[essential requirement of his job.]"  Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 466

(4th Cir. 2012).  To establish the existence of a reasonable accommodation available in the

---

[8]The court does not mean to imply that providing CPR was, itself, an essential function of plaintiff's job.  It is undisputed that CPR was not an essential function.  However, at the time plaintiff was terminated, North Carolina law did not allow a pharmacist providing injections to delegate the responsibility to perform CPR to another pharmacy employee.  Thus, plaintiff's ability to perform CPR, although non-essential, was required under state law.

16

immediate future, plaintiff must provide a time at which he would be able to perform all essential functions of his job, as well as evidence that the proposed accommodation will be successful. See id.

Plaintiff requested defendant Rite Aid allow another pharmacy employee perform CPR in his place. However, at the time of plaintiff's termination, this change had not been approved by the North Carolina Board of Pharmacy. Although the Board of Pharmacy eventually approved the arrangement plaintiff requested, there is no evidence regarding if the proposal had been made at the date of his termination, when it was to be voted on, or the likelihood it would pass. Thus, given the speculative nature of the changes necessary to accommodate plaintiff, the court must conclude that, assuming immunization is shown to be an essential function, defendant Rite Aid is entitled to summary judgment because plaintiff's requested accommodations would not become reasonable in the immediate future.[9]

Finally, the court turns to plaintiff's argument that defendant Rite Aid could have reasonably accommodated him by reducing his hours, compensation, or job responsibility. Plaintiff suggests that defendant Rite Aid could have reduced the number of hours he was required to work in order to "make it easier to schedule him to work with another person . . . who could perform immunizations." However, as discussed above, assuming it can be shown immunization is an essential function, defendant Rite Aid is not obligated to accommodate plaintiff by reallocating that

---

[9] Plaintiff's proposals stem from the expert report of Rodney Richmond (DE 88-18). Again, the court observes defendant's pending motion to exclude Richmond's report. (DE 73). However, as it relates to this issue, defendant's motion is moot, where Richmond's report, accepted as true, fails to set forth a proposed accommodation that is reasonable as a matter of law.

essential function or make a permanent reduction in essential functions.  Carter, 822 F.2d at 467. [10]

In sum, presuming immunization is an essential function, none of plaintiff's proposed accommodations are reasonable as a matter of law, and summary judgment is warranted in favor of defendant as to this issue of plaintiff's ADA claim.

### c.    Interactive Process

The court next addresses plaintiff's final argument pertinent to his failure to accommodate claim, that defendant Rite Aid failed to engage him in an interactive bargaining process to ascertain a reasonable accommodation.  Where the function at issue is essential, an employer may be required to "initiate an informal, interactive process with the individual with a disability in need of [an] accommodation," to determine the appropriate reasonable accommodation.   29 C.F.R. § 1630.2(o)(3).  "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  Id.

Plaintiff contends defendant Rite Aid terminated him in lieu of engaging in an interactive process.  The court need not address plaintiff's argument.  Where defendant is entitled to summary judgment on the issue of reasonable accommodation, plaintiff's argument must fail.  An employer cannot be held liable for failure to engage in the interactive process where the "employee cannot identify a reasonable accommodation that would have been possible."  Wilson, 717 F.3d at 347.  Moreover, there is no liability if "the parties could [not] have found a reasonable accommodation that would enable [plaintiff] to perform the job's essential functions."  Id.  In this  case, the record

---

[10] To the extent plaintiff's requests for reduced compensation in exchange for reduced responsibility constituted a request for a different position, plaintiff's proposed accommodation is still unreasonable as a matter of law. Reassignment to a vacant position is a reasonable accommodation, 29 C.F.R. § 1630.2(o)(2)(ii), but creating a new position for the sole purpose of accommodating plaintiff's impairments is not.

is clear that, if immunization is essential, no reasonable accommodation exists whereby plaintiff could perform the allegedly essential function of administering vaccines.

In sum, plaintiff's motion for summary judgment as to his failure to accommodate claim is denied. Defendant Rite Aid's motion for summary judgment on plaintiff's failure to accommodate claim is granted in part. Remaining for trail are the issues of (1) whether plaintiff was disabled and (2) whether administration of injections was an essential function of the job.

### 2. Retaliation

The court now turns to plaintiff's second claim. Plaintiff contends that defendant Rite Aid terminated him in retaliation for requesting accommodation. Defendant Rite Aid counters that plaintiff was terminated because he was unable to perform an essential function of his job. There is a genuine dispute of material fact as to whether defendant Rite Aid retaliated against plaintiff.

Plaintiff may employ a burden-shifting approach to prove retaliatory discharge. Haulbrook v. Michelin N. Am., 252 F.3d 696, 706 (4th Cir. 2001). Under that method of proof, plaintiff must bring forward evidence to support each element of the *prima facie* case. Id. Thereafter, the burden shifts to defendant Rite Aid to come forward with a legitimate non-retaliatory reason for plaintiff's termination. Id. Finally, the burden shifts back to plaintiff to demonstrate that defendant Rite Aid's proffered reason is a pretext for retaliation.

A prima facie case for retaliatory discharge requires plaintiff to show "(1) that he engaged in protected activity; (2) that his employer took an adverse action against him; and (3) that a causal connection existed between the adverse activity and the protected action." Id. The first and second elements are uncontested in this case. Plaintiff engaged in protected activity. In particular, plaintiff requested an accommodation for his inability to administer immunizations. See id. Moreover,

defendant Rite Aid took an adverse employment action by terminating plaintiff. See id. The parties dispute concerns the existence of a causal connection between the two acts.

Plaintiff does not move for summary judgment on the issue of causal connection. Instead, plaintiff contends that summary judgment is inappropriate because a genuine issue of material fact exists. Defendant Rite Aid, however, contends that plaintiff cannot establish a casual connection because there is a lack of temporal proximity between plaintiff's first request for an accommodation and his ultimate termination. If the defendant's alleged retaliatory act is close in time to plaintiff's request for accommodation, then summary judgment for defendant is inappropriate. See id.

Defendant argues plaintiff's February 2011 request for accommodations, coupled with the passage of more than six months, entitles it to summary judgment. In support of that proposition defendant cites Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229 (4th Cir. 2006). Pascual is a Title VII case. There, plaintiff complained to his supervisor of sexual harassment in May and was terminated in September of the same year. Id. at 231-32. The May sexual harassment complaint was the only complaint made by plaintiff. Id. The Fourth Circuit held the amount of time elapsed between plaintiff's isolated sexual harassment complaint and his ultimate termination was too great, thus no causal connection could be inferred. Id. at 233.

Defendant's argument is unavailing. In the instant case, plaintiff first requested an accommodation in February 2011. While it certainly is true that plaintiff's termination came more than six months after his initial request, his request did not occur in a vacuum. Here, at the time of plaintiff's termination, the parties were in the process of negotiating an accommodation. Defendant Rite Aid, in fact, requested proposals of potential accommodations from plaintiff only a little more than week prior to his termination. Thus, this case is distinguishable from one where plaintiff is

20

terminated months after making an isolated request for an accommodation. Drawing all the inferences in the light most favorable to plaintiff, there is a genuine issue of material fact as to whether plaintiff's termination was caused by his renewed request for accommodation.

Next the court turns to defendant's proffered legitimate non-retaliatory reason. If plaintiff is capable of establishing the prima facie case, the burden will shift to defendant to proffer a legitimate non-retaliatory reason for plaintiff's termination. Defendant has met its burden of production. In particular, defendant alleges plaintiff was fired because he could not immunize. Most retail-pharmacy chains required their pharmacists to provide immunizations. If plaintiff was unable to provide immunizations, defendant was likely to lose business to other pharmacies where customers could receive immunizations without the need to be scheduled for a future date.

The burden next shifts back to plaintiff to demonstrate that defendant's proffered non-retaliatory reason is a pretext for retaliation. Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). Plaintiff may establish pretext by showing that defendant's explanation is "unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of retaliation." Id. (internal quotations and alterations omitted) (quoting Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004)). Plaintiff need not show defendant intended to retaliate. If plaintiff shows defendant's proffered explanation is unworthy of credence, the jury may infer defendant's intent to retaliate. Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).

The parties both argue they are entitled to summary judgment on the issue of pretext. Plaintiff contends that he is entitled to summary judgment because defendant allowed another employee ,who was unable to immunize due to an inability to administer CPR, to remain employed until a suitable accommodation was found. Defendant, on the other hand, attempts to distinguish

21

that employee's situation from plaintiff's by arguing she actively sought to persuade the North Carolina Board of Pharmacy to change a regulation, which made her accommodation possible.

The evidence before the court creates a dispute of fact. Like plaintiff, the employee in question needed an accommodation that required approval by the North Carolina Board of Pharmacy. (DE 100, at 7-8). Her accommodation was approved shortly after plaintiff's termination. However, there is no evidence concerning whether the other employee's needed accommodation had been proposed at the date of plaintiff's termination, when the other employee's requested accommodation was to be voted on, or the likelihood it would pass. Thus, there is a question of fact as to how closely related plaintiff's case is compared with the other employee's request for accommodation.

In sum, a genuine dispute of material fact exists as to both the prima facie case and the issue of pretext. Therefore, defendant's motion for summary judgment on plaintiff's retaliation claim, and plaintiff's partial motion for summary judgment on the same, must be denied.

### 3. Wrongful Denial of STD Benefits

The court now turns to plaintiff's wrongful denial of STD benefits claims. Plaintiff asserts two claims in the alternative against defendant Rite Aid and defendant Prudential. The first claim is brought pursuant to 29 U.S.C. § 1132(a), ERISA's civil enforcement provision. Plaintiff's second claim is brought under North Carolina contract law. Plaintiff and defendant Rite Aid have cross moved for summary judgment on both claims. Defendant Prudential has not moved for summary judgment on either claim. The court grants defendant Rite Aid's motion for summary judgment on each claim. In addition, on the court's own initiative and pursuant to Federal Rule of Civil

Procedure 56(f), plaintiff is hereby ordered to show cause within 21 days as to why summary judgment should not be entered in favor of defendant Prudential on the same basis .

### a. ERISA Civil Enforcement

Plaintiff's STD benefits ERISA claim cannot survive summary judgment.  Defendant Rite Aid contends, and plaintiff concedes, that defendant Rite Aid's uninsured, self-funded STD benefit program is not governed by ERISA.  ERISA defines "employee benefit plans" to include both "employee pension benefit plans" and "employee welfare benefit plans." 29 U.S.C. § 1002(3). "Employee benefit plan" is defined as:

> any plan, fund, or program which was . . . established or maintained by an employer or by an employee organization, or by both, . . . for the purpose of providing for its participants . . . through the purchase of insurance or . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.

Id. § 1002(1).

While the language of section 1002(1) creates a broad definition of coverage, certain types of plans are exempted by federal regulation.  See 29 C.F.R. § 2510.3-1.  One such regulatory exemption is the "payroll practice" exemption, which excludes "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his duties, or is otherwise absent for medical reasons." 29 C.F.R. § 2510.3-1(b)(2).  ERISA coverage is a question of fact.  Barringer-Willis v. Healthsource N.C. Inc., 14 F. Supp. 2d 780, 782 (E.D.N.C. 1998);  Int'l Ass'n of Entrepreneurs of Am. Ben. Trust v. Foster, 883 F. Supp. 1050, 1056 (E.D. Va.  1995).  Here, the undisputed facts show that defendant Rite Aid paid all short-term disability claims out of their general assets.

Defendant Rite Aid's STD benefits plan falls squarely in the exemption contained in the regulations. Therefore, defendant Rite Aid's motion is granted on this claim.

### b. Breach of Contract Theory

Next, the court turns to plaintiff's claim that both defendant Rite Aid and defendant Prudential are liable for wrongful denial of STD benefits under a breach of contract theory. Plaintiff first argues defendant Prudential, as claims administrator, was not given discretion to determine eligibility for benefits by the terms of the plan and thus was required to approve his STD benefits claim. Plaintiff also suggests defendant Rite Aid, which had final authority to approve or deny STD benefits under the terms of the agreement between defendants, is liable by virtue of that authority. Plaintiff then argues that, by virtue of defendant Prudential's lack of discretion, he was owed STD benefits from April 2011 until his date of termination and for an unspecified period thereafter.

In North Carolina, a court's primary function in contractual interpretation is to ascertain the parties intent as expressed in the written instrument. See Lane v. Scarborough, 284 N.C. 407, 409-10 (1973). Where the language of a contract is clear, the intent of the parties is inferred from the words of the contract, considered as a whole. North Carolina v. Philip Morris USA Inc., 363 N.C. 623, 631-32 (2009). If the terms of a contract are ambiguous, only then my a court apply rules of construction. Jones v. Casstevens, 222 N.C. 411, 413 (1942). Ambiguities are construed against the drafter. Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 171 (4th Cir. 2013) (citing Novacare Orthotics & Prosthetics E., Inc. v. Speelman, 137 N.C. App. 471, 475 (2000)). When the contract under consideration is one for insurance, as it is here, ambiguities must be construed in favor of the insured. Id.; see also Kirkley v. Merrimack Mut. Fire Ins. Co., 232 N.C. 292, 294 (1950).

The contract at issue does not require payment of STD benefits while the employee is still drawing a salary. Rather, by its terms, the contract provides for STD benefits where the covered employee is out of work and unable to earn a salary. The contract refers to STD benefits as salary "continuation" benefits, providing in pertinent part an employee "may qualify for salary continuation benefits through this [plan] if [the employee] incur[s] a disability which renders [the employee] unable to perform the material and substantial duties of [the employee's] regular occupation." (Group Insurance Contract, at 38). Continuation means "continuance in a state, existence, or activity; uninterrupted extension or succession; prolongation." Webster's Third New Int'l Dictionary 493 (2002). Thus, the contract only speaks of prolonging or continuing payment of wages. It does not bind defendant to provide additional payments when an employee is actively working and earning their own wages. Moreover, the contract references STD benefits terminating when an employee "return[s] to active employment." This language clearly contemplates STD benefits serving as a salary substitute rather than a windfall in addition to salary.

Plaintiff also suggests he is entitled to STD benefits for a period of time beginning on September 8, 2011, the date of his termination, and lasting for an unspecified period thereafter. However, this argument cannot succeed. First, plaintiff is not entitled to any benefits after his date of termination. By its plain terms, the contract does not obligate defendant Rite Aid to pay STD benefits after the date of termination. Specifically, the contract provides that eligibility for STD benefits ends when "employment with [defendant Rite Aid] terminates." (SCB Brochure). In addition, plaintiff is not entitled to recover STD benefits for the date of his termination. Plaintiff was paid for the full day on September 8, 2011. (Buser Dep. 259:4-7). Therefore, as discussed above, plaintiff is not entitled to STD benefits for a day on which he was paid.

25

In sum, plaintiff is not entitled to recover STD benefits where he was still actively working throughout his alleged period of disability. Therefore, the court grants defendant Rite Aid's motion for summary judgment on plaintiff's breach of contract claim and denies plaintiff's motion for summary judgment on the same. Plaintiff is directed to show cause on why summary judgment should not be granted in favor of defendant Prudential within 21 days of the date of this order.

**4.      Wrongful Denial of LTD Benefits**

Plaintiff and defendant Prudential have cross-moved for summary judgment on plaintiff's claim for wrongful denial of LTD benefits under ERISA.

Plaintiff contends that he is entitled to LTD benefits employing a similar theory. Plaintiff argues that defendant Prudential had no discretion to deny him benefits if he meets the requirements set out in the contract. Further, plaintiff submits, the LTD benefits plan provides that coverage ends on "the date you are no longer in active employment due to a disability that is not covered under the plan." (LTD Benefits Contract, DE 82-4, at 8) Defendant Prudential argues that plaintiff is not covered under the plain language of the contract. In support of its argument, defendant directs the court to an additional provision that states coverage ends "the date you are no longer a member of the covered class." (Id.) The "covered class" consists of "all regular . . . employees of the employer, regular hourly paid pharmacist of the employer, or regular non-exempt employees of the employer who are employed in [a certain benefit group.]" (Id. at 1).

After reviewing the contract in its entirety, the court agrees with defendant. The contract provides several conditions on the occurrence of which coverage abates. It also provides that coverage ends when one of the conditions is satisfied. Here, the relevant condition is discontinued membership in the protected class. Plaintiff was terminated on September 8, 2011. Thereafter,

26

plaintiff was not a "regular hourly paid pharmacist," and thus was not entitled to benefits. In any event, plaintiff could not fit into any other covered class because he was no longer employed by defendant Rite Aid.[11]

## C.    Pre-trial Scheduling

In light of the court's summary judgment determination, this case now will proceed to a jury trial. The parties are directed to confer and to make a joint report to the court within **28 days** as to the estimated length of the trial, three alternative suggested trial dates, and suggested alternative dispute resolution techniques to be employed prior to trial in attempt to resolve remaining issues between the parties. Thereafter, the court will enter a scheduling order

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART defendant Rite Aid's motion for summary judgment. (DE 83). The court GRANTS IN PART plaintiff's motion for summary judgment. (DE 87). The court GRANTS defendant Prudential's motion for summary judgment on plaintiff's wrongful denial of LTD benefits claims. (DE 85). Plaintiff is DIRECTED to show cause within **21 days** of this order as to why summary judgment should not be granted in favor of defendant Prudential on claims three and five, on the basis set forth herein with respect to the same claims brought against defendant Rite Aid. Defendants may file a reply to any response to the show cause order, in the event any is filed, within **7 days** thereafter.

---

[11]        Plaintiff also is not entitled to LTD benefits for September 8, 2011. In order to become eligible for LTD benefits, an applicant must suffer a 20% loss in monthly earnings. (LTD Benefits Contract, at 13). However, as noted, it is uncontested that plaintiff was paid for September 8, 2011, and therefore suffered no loss up until that date. (See Buser Dep. 259:4-7). Thereafter, although plaintiff did suffer a reduction in monthly earnings, plaintiff was no longer covered under the plain language of the LTD benefits contract as he was not part of the "covered class."

The parties are directed to confer and to make a joint report to the court within **28 days** with respect to trial and alternative dispute resolution, as set forth in more detail above.

SO ORDERED, this the 2nd day of February, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge