THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-755-FL

| | |
|---|---|
| JAMES BUSER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ECKERD CORPORATION d/b/a/ RITE ) | |
| AID, a subsidiary of RITE AID ) | |
| CORPORATION, ) | |
| ) | |
| Defendant.[1] ) | |

This case comes before the court on defendant's motions to exclude the testimony and reports of plaintiff's proffered experts Jean Hutchinson ("Hutchinson") and Rodney Richmond ("Richmond") (DE 71, 73). The motions have been briefed fully and now are ripe for ruling. For the reasons that follow, the court grants defendant's motion to exclude Hutchinson and grants in part defendant's motion to exclude Richmond.

**STATEMENT OF THE CASE**

On November 19, 2012, plaintiff, formerly a pharmacist with defendant Eckerd Corporation, doing business as Rite Aid Pharmacy ("Rite Aid"), filed suit in this court alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* As relevant here, plaintiff

---

[1]The third amended complaint names Eckerd Corporation and the Prudential Insurance Company of America ("Prudential") as defendants. However, as a result of the court's order, also entered this day, granting summary judgment on all claims asserted by plaintiff against Prudential, the court constructively amends the case caption to reflect Prudential's terminated participation in this matter.

contended defendant failed to accommodate his disability, Parkinson's disease, and terminated him in retaliation for requesting an accommodation.

The court set forth a more thorough discussion of the facts in its February 2, 2015, order on summary judgment ("Summary Judgment Order").[2] However, a brief recitation of the facts aids in understanding of the court's analysis of the issues currently pending.

Plaintiff was a long-time pharmacist with defendant from at least 1987 until his termination in September 2011. In 2009, plaintiff was diagnosed with Parkinson's disease, which caused tremors in his dominant right hand. Beginning in 2011, defendant required all pharmacist begin administering immunizations. Plaintiff protested this requirement, arguing his tremors made it unsafe for him to administer vaccinations. Plaintiff requested defendant exempt him from the vaccination requirement, or in the alternative, that defendant provide an automatic injector to allow him to administer injections without using an exposed needle.

After approximately a month of discussion regarding proposed accommodations for plaintiff's disability, beginning August 2011, defendant terminated plaintiff. Defendant gave as its reason for terminating plaintiff his inability or unwillingness to administer immunizations, which it deemed to be an "essential job function," as defined by the ADA. After a period of discovery, the parties cross-moved for partial summary judgment.

On March 21, 2014, the court entered order requiring the parties submit motions to exclude witnesses on or before May 12, 2014. Subsequently, on May 12, 2014, defendant filed two motions under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), seeking to exclude the reports and testimony of plaintiff's proffered expert witnesses, Hutchinson and Richmond.

---

[2] There is a motion now pending, filed February 26, 2015, wherein defendant seeks the court to reconsider its ruling denying defendant's motion for summary judgment on plaintiff's retaliation claim. (DE 109).

Thereafter, on February 2, 2015, the court entered order granting in part defendant Rite Aid's partial motion for summary judgment and denied plaintiff's partial motion for summary judgment. As relevant here, on summary judgment the court parsed plaintiff's failure to accommodate claim on an issue-by-issue basis. The court determined that a failure to accommodate claim required plaintiff to show 1) he was disabled within the meaning of the statute; 2) defendant had notice of his disability; 3) he could have performed the essential functions of the position with a reasonable accommodation; and 4) defendant refused to make such accommodation. The court determined plaintiff had forecast sufficient evidence to create a genuine issue of material fact on whether he was disabled and whether immunizations are an essential function of his job. However, the court also held plaintiff failed to adduce sufficient evidence showing a reasonable accommodation existed, if immunization was determined to be an essential function of his job.

**COURT'S DISCUSSION**

A.  Standard of Review

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of proof. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001). A district court is granted broad latitude in making its determination on the admissibility of proposed expert testimony. United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994) ("The trial judge has broad discretion under Rule 702."). Review of the Daubert case law by the advisory committee shows that the rejection of expert testimony is the exception rather than the rule. Fed. R. Evid. 702 advisory committee's note (2000).

Rule 702 provides that expert testimony is appropriate when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 further provides that a witness qualified as an expert may be permitted to testify where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. Courts have distilled the requirements of Rule 702 into two crucial inquiries: whether the proposed expert's testimony is relevant and whether it is reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993); United States v. Forrest, 429 F.3d 73, 80 (4th Cir. 2005). The trial court must carry out the special gate-keeping obligation of ensuring that expert testimony meets both requirements. Kumho Tire, 526 U.S. at 147; United States v. Moreland, 437 F.3d 424, 431 (4th Cir. 2006), overruling on other grounds recognized by United States v. Diosdado-Star, 630 F.3d 359 (4th Cir. 2011).

In order to be considered relevant, the proposed expert testimony must appear to be helpful to the trier of fact. See Daubert, 509 U.S. at 591-92. "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).

"'[T]he test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" United States v. Wilson, 484 F. 3d 267, 274 (4th Cir. 2007) (quoting Kumho Tire, 526 U.S. at 141-42). One factor pertinent to reliability is the proposed expert's qualifications. See Giddings v. Bristol-Myers Squibb Co., 192 F. Supp. 2d 421, 425 (D. Md. 2002). A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill,

4

experience, training, or education. Kumho Tire, 526 U.S. at 147. The Fourth Circuit has ruled that when an expert's qualifications are challenged, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" Kopf, 993 F.2d at 377 (quoting Thomas J Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989)).

Additional factors also bear on the reliability of the expert's testimony. They may include: "(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its application; and (4) whether the theory or technique enjoys general acceptance within the relevant community." Tunnell v. Ford Motor Co., 245 F. App'x. 283, 286 (4th Cir. 2007) (citing Kumho Tire, 526 U.S. at 149-50); accord Daubert, 509 U.S. at 593-94. In addition, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." Tyger Const. Co. Inc. v. Pensacola Const. Co., 29 F.3d 137, 142 (4th Cir. 1994).

Of course, the admission of expert testimony must be considered within the context of the other rules of evidence. In particular, Rule 403 provides that the court must ensure that the probative value of any proffered evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As this court has noted, "[d]espite the court's ability to exercise broad discretion and flexibility when determining the admissibility of expert testimony, the court must balance this discretion with the concerns of Rule 403 to ensure that the probative value of the proffered testimony is not 'substantially outweighed

5

by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Bouygues Telecom, S.A. v. Tekelec, 472 F. Supp. 2d 722, 725 (E.D.N.C. 2007) (quoting Fed. R. Evid. 403).

B.   Analysis

   1.   Expert Report and Testimony of Jean Hutchinson

Hutchinson is a vocational consultant, hired by plaintiff to opine on plaintiff's damages and mitigation efforts. Hutchinson's brief report contains two opinions. In the first, she opines that plaintiff "has suffered and will continue to suffer a very substantial loss of future income as a result of his termination from Rite Aid and their failure to provide reasonable accommodations . . . [and that plaintiff's] termination has had and continues to have a negative impact on his ability to become reemployed." (Hutchinson Report, DE 72-1, at 4). Second she states that plaintiff:

> is capable of working in a less than full-time capacity, up to thirty hours per week, as a pharmacist with the reasonable accommodations of shorter work hours, a work site near his home, and waiver of the requirement to administer immunizations. . . . [I]t is unlikely that [plaintiff] will be able to regain employment as a pharmacist unless provided with the above referenced or similar accommodations.

(Id.). In forming her opinions, Hutchinson reviewed a "case file" provided to her by plaintiff, comprised of the complaint; a functional capacities examination conducted on plaintiff after his termination; defendant's job description for plaintiff's former position; some of plaintiff's prior performance evaluations; plaintiff's termination letter; as well as plaintiff's EEOC charge. In addition, Hutchinson reviewed emails between plaintiff and his supervisor; records from plaintiff's neurologist and orthopedic specialists; and a letter from plaintiff's doctors to defendant. Finally, Hutchinson interviewed plaintiff via telephone for approximately one hour.

Defendant argues Hutchinson's report is either not the product of reliable principles and methods or not the product of principles and methods reliably applied to the facts of the case. In

6

addition, defendant argues Hutchinson's opinions will not "assist" the trier of fact, as she opines on things readily understandable by lay persons and that her opinions are improper legal conclusions. The court agrees that plaintiff has not established the admissibility of Hutchinson's opinion and report, because her opinion and deposition testimony do not indicate reliable application of her experience to the facts of this case.

Plaintiff tenders Hutchinson as an expert solely based on her experience in the field of vocational rehabilitation. (Pl.'s Resp. Br., DE 78, at 6,8). This court has previously held that when a party tenders an expert's opinion based on experience alone, the expert must explain "[1] how that experience leads to the conclusion reached, [2] why that experience is a sufficient basis for the opinion, and [3] how that experience is reliably applied to the facts." SMD Software, Inc. v. Emove, Inc., 945 F. Supp. 2d 628, 644 (E.D.N.C. 2013) (citing Fed. R. Evid. 702 advisory committee notes (2000)); see also Wilson, 484 F.3d at 274 ("[T]he district court must nonetheless require an experiential witness to explain how his experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." (internal quotations and alterations omitted)). Sufficient explanation is necessary, because "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Moreover, "an expert's opinion is inadmissible when it is based on assumptions that are speculative and are not supported by the record." Smith v. Va. Commonwealth Univ., 84 F.3d 672, 687 n.7 (4th Cir. 1996).

In all regards, Hutchinson fails to explain both how and why her expertise is a sufficient basis for her opinions. Turning to Hutchinson's first opinion, at her deposition she highlighted the

7

fact that her expertise plays no part in her conclusion that plaintiff has suffered, and will continue to suffer, a substantial loss of income. In particular, she states:

> Q. And what is the basis for your opinion that [plaintiff] has suffered and will continue to suffer a substantial loss of future income?
> A. Because he is unemployed and making no money.
> Q. So anyone who has lost their job has likely suffered a loss of income?
> A. Yes.
> Q. And is that based on any particular study or publication?
> A. No. That's just how it actually is.

(Hutchinson Dep. 66:20-67:7). This testimony highlights the obvious nature of her conclusion and evidences her conclusion is not based on her expertise. In addition, the second portion of her first opinion, addressing plaintiff's ability to become re-employed, is unsupported under the required analytical structure. Although Hutchinson provides a brief discussion of the factors bearing on how plaintiff's continued unemployment affects his ability to find new work, when asked for the basis of her opinion she offered nothing more than a conclusory statement that her opinion is based "on the information in [plaintiff's] case file and [her] knowledge of the job market." (Id. 92:2-6). This conclusion is not sufficient to explain why or how Hutchinson's experience provides a sufficient basis for her opinion.

The record also does not support admission of Hutchinson's second opinion. For example, Hutchinson provides no analysis to support her conclusory statement addressing accommodations, wherein she opines plaintiff can work only up to 30 hours per week, and requires "shorter work hours, a work site near his home, and waiver of the requirement to administer immunizations." (DE 72–1, at 4). Although Hutchinson concludes plaintiff requires such accommodations based on her review of the "information in [plaintiff's] file," she fails to provide any analytical discussion grounding her opinion in fact. (See Hutchinson Dep. 66:13-15). Despite Hutchinson's purported

8

use of her method, her report and deposition contain a dearth of analysis explaining how those factors are "reliably applied to the facts" of the case.

In any event, Hutchinson's testimony undercuts any argument that her opinion is based on "reliable application" of her experience to the facts of this case. In particular, she notes that a 30-hour workweek is "generally accepted," but also states that she "[does not] know if [a 30-hour workweek is warranted] specifically in this case." (Hutchinson Dep. 85:1-17). Moreover, although she defines "a work site near [plaintiff's] home" to mean a work site no farther than 30 minutes away, (Id. 88:14-89:11), she reached that conclusion without consideration of the specific facts of the case relevant to plaintiff's condition. (Id. 88:21-89:5).

Based on the foregoing, the court finds that Hutchinson's report is inadmissible. When parties seek to introduce experts based on experience alone, the reports and opinions of such experts are subject to a certain degree of scrutiny to ensure consistency with the requirements outlined in Daubert. Although the district court has substantial flexibility in evaluating experiential expert reports, flexibility does not relieve burden on the proponent of the expert testimony to demonstrate the expert's methods have been reliably applied to the facts of the case.

2. Expert Report of Rodney Richmond

Richmond is a pharmacist and professor of pharmacy at Harding University. If allowed to testify at trial, Richmond will offer two opinions. Foremost, he will opine on the existence of reasonable accommodations, which could have been utilized in 2011, that would have either allowed plaintiff to administer immunizations or allowed a third party to administer such immunizations without any damage to defendant's efficiencies. In addition, Richmond will opine that plaintiff was capable of fulfilling the essential functions of his job as a staff pharmacist at Rite Aid.

9

As an initial matter, the court's ruling on summary judgment entered February 2, 2015, obviates the need for much of Richmond's testimony, where the court noted that his testimony failed, as a matter of law, to forecast any possible reasonable accommodation available at the time of plaintiff's termination. Buser v. Eckerd Corp., No. 5:12-CV-755-FL, 2015 WL 418172, at *8 n.7 (E.D.N.C. Feb. 2, 2015). Accordingly, in light of the court's prior consideration of Richmond's testimony, and subsequent grant of summary judgment in defendant's favor on the issue of reasonable accommodation, Richmond's opinion must be excluded as irrelevant.

Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact in consequence more or less likely than it would be without the evidence. See Fed. R. Evid. 401. Richmond's purported testimony addresses plaintiff's ADA failure to accommodate claim. In its Summary Judgment Order, the court parsed the issues in this claim, and, as pertinent here, granted summary judgment in defendant's favor in part because plaintiff failed to forecast any evidence of reasonable accommodations as contemplated by the ADA that existed at the time of his termination. Thus, to the extent Richmond opines on the existence of such reasonable accommodations his report and testimony must be excluded as irrelevant.

In addition, to the extent Richmond opines that plaintiff could perform all the essential functions of his job with or without a reasonable accommodation, that, too, is irrelevant. Because plaintiff did not forecast evidence tending to show the existence of a reasonable accommodation, which would afford him the ability to immunize, plaintiff cannot perform all the essential functions of his job, as a matter of law, if immunization is found to constitute an essential function. The only relevant issue pending before the court on which Richmond may opine is whether the administration of immunizations, in fact, was an essential function of plaintiff's job as a staff pharmacist. Such

10

evidence will be relevant at trial, where the applicable regulations specifically contemplate the "current work experience of incumbents in similar jobs" as relevant to the determination of whether a function is essential or marginal. 20 C.F.R. § 1630.2(n)(3)(vii). Accordingly, where defendant's motion to exclude addresses this issue, the court now turns to that motion.

Defendant argues Richmond's opinion on the "essential duties" of plaintiff's job should be excluded for two reasons. First, defendant contends Richmond is unqualified to offer such opinion. In addition, defendant contends that Richmond's opinion on what is or is not a pharmacist's "essential function or duty" is an improper legal conclusion. The court disagrees with defendant's characterization of Richmond as unqualified. However, the court herein limits the terms Richmond may use in providing his opinion.

Richmond is qualified to opine on what constitutes a pharmacist's essential duties. Richmond has been a licensed pharmacist since 1985. Since that time, he has held numerous teaching positions, including positions as a clinical instructor of pharmacy at the University of North Carolina School of Pharmacy; professor for the doctor of pharmacy clerkship program at the University of Pittsburgh, as well as professor of the doctor of pharmacy experiential clerkship and hospital pharmacy clerkship at the University of West Virginia. This experience spans almost 20 years. With such a robust clinical background, the court determines Richmond is qualified to opine on a pharmacist's responsibilities.

Nevertheless, Richmond may not use the phrase "essential function." Federal Rule of Evidence 704(a) provides that "an opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). The broad discretion granted by Rule 704 must be read in context with other Rules of Evidence. In particular, the advisory committee notes state that Rules 403, 701, and

11

702 provide "ample assurances against the admission of opinions which would merely tell the jury what result to reach." Id. advisory committee notes.

The Fourth Circuit has interpreted Rule 702 to limit legal opinions when the expert "states a legal standard or draws a legal conclusion by applying law to the facts, because it supplies the jury with no information other than the witness's view of how the verdict should be read." United States v. Offill, 666 F.3d 168, 175 (4th Cir. 2011) (citations omitted). Thus, testimony "that states a legal standard or draws a legal conclusion" is generally inadmissible. United States v. McIver, 470 F.3d 550, 561-62 (4th Cir. 2006).

Plaintiff does not dispute that "essential function" is a term of art, at issue in this case. Plaintiff contends only that Richmond's opinion is constrained by the "limited vernacular" available to him in discussing a pharmacist's usual and customary job duties. See McIver, 470 F.3d at 562. Plaintiff's argument is unavailing. Essential function is a legal term of art, particularly defined by the statute, which is likely to appear before the jury on the verdict sheet. See 29 C.F.R. § 1630.2(n). As such, to allow Richmond to use that term would be to "suppl[y] the jury with no information other than the witness's view of how the verdict should be read." Offill, 666 F.3d at 175.

In addition, Richmond may not use the phrase "essential duty," despite the fact that term is not a legal term of art. Previously, the Fourth Circuit has noted that certain terms bearing similarity to legal terms of art properly may be used by an expert, despite that similarity. McIver, 470 F.3d at 562. The court so reasoned, because those words were part of the "limited vernacular" available to the expert. Id. However, the terminology addressed in McIver were general terms, including "illegitimate" or "inappropriate." Id. Here, however, the term "essential duty," hues so closely to the term provided in the applicable regulations as to be almost indistinguishable therefrom. See id.

Accordingly, to allow Richmond to opine expressly as to the "essential duties" of plaintiff's job would be inappropriate, again because it would "suppl[y] the jury with no information other than the witness's view of how the verdict should be read."

Nevertheless, the use of legal terms alone is insufficient to justify exclusion of Richmond's opinion in its entirety. Rather, the court entrusts plaintiff's counsel to inform Richmond of the limitations on his opinion, so to avoid impermissible legal opinions at trial.

In sum, to the limited extent it is relevant to the issues remaining in this case, Richmond's opinion is admissible. Richmond may not opine on what would have been a reasonable accommodation or whether plaintiff can perform the essential functions of his job. However, Richmond may offer testimony to inform the jury what the essential functions of plaintiff's job were. Richmond may not use the words "essential functions" or "essential duties" in so doing.

## CONCLUSION

Based on the foregoing, defendant's motion to exclude the proffered expert testimony and report of Jean Hutchinson is GRANTED. (DE 71). In addition, defendant's motion to exclude the proffered expert testimony and report of Rodney Richmond is GRANTED in PART and DENIED in PART. (DE 73).

SO ORDERED, this the 27th day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge